IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-00589-WYD-CBS

ALBERT GONZALES,

       Applicant,

v.

WARDEN STEVE HARTLEY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

       Respondents.

---

## ORDER OF DISMISSAL

---

       Applicant Albert Gonzales is a prisoner in the custody of the Colorado

Department of Corrections at the Limon Correctional Facility in Limon, Colorado.  Mr.

Gonzales has filed ***pro se*** an application for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 challenging the validity of his conviction in Larimer County District Court

case number 98CR1467.  On April 4, 2008, I directed Respondents to file an answer to

the habeas corpus application.  On April 24, 2008, Respondents filed their answer.  On

June 23, 2008, Mr. Gonzales filed a traverse to Respondents' answer.  On October 14,

2008, I ordered Respondents to provide the state court record of Mr. Gonzales' criminal

case.  The state court record was received on October 31, 2008.

       I must construe the application and other papers filed by Mr. Gonzales liberally

because he is not represented by an attorney.  ***See Haines v. Kerner***, 404 U.S. 519,

520-21 (1972); ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I

should not be an advocate for a ***pro se*** litigant.   ***See Hall***, 935 F.2d at 1110.   After

reviewing the entire file and the state court record, I find that an evidentiary hearing is

not necessary.   For the reasons stated below, the habeas corpus application will be

denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Gonzales was convicted of one count of first degree murder after deliberation

and he was sentenced to life in prison without the possibility of parole.   The victim was

Mr. Gonzales' girlfriend and her body was discovered in a motel room by a motel

housekeeper.   Mr. Gonzales concedes that he killed his girlfriend, but he argues that the

killing was not an intentional act following deliberation.

The judgment of conviction was affirmed on direct appeal.   ***See People v.***

***Gonzales***, No. 00CA1205 (Colo. Ct. App. May 16, 2002) ("***Gonzales I***") (not selected

for publication).   On September 16, 2002, the Colorado Supreme Court denied Mr.

Gonzales' petition for writ of certiorari on direct appeal.   On November 18, 2002, Mr.

Gonzales filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of

Criminal Procedure.   The trial court denied the Rule 35(c) motion and on August 16,

2007, the Colorado Court of Appeals affirmed the denial of the Rule 35(c) motion.   ***See***

***People v. Gonzales***, No. 05CA2215 (Colo. Ct. App. Aug. 16, 2007) ("***Gonzales II***") (not

selected for publication).   On December 17, 2007, the Colorado Supreme Court denied

Mr. Gonzales' petition for writ of certiorari in the state court postconviction proceedings.

The instant action was received for filing on March 12, 2008.

Mr. Gonzales asserts six claims for relief in the habeas corpus application.

2

Those six claims are the following:

1.   Trial counsel provided ineffective assistance by coercing Mr. Gonzales to waive his right to testify.

2.   Trial counsel was ineffective due to a conflict of interest.

3.   Trial counsel was ineffective by failing to communicate with Mr. Gonzales and by failing to call an expert witness to testify regarding a brain injury Mr. Gonzales suffered in 1992.

4.   Mr. Gonzales was denied a fair trial when the trial court denied his challenges for cause of two prospective jurors.

5.   Mr. Gonzales was denied a fair trial when the police failed to collect and preserve exculpatory evidence.[1]

6.   Mr. Gonzales was denied a fair trial when the trial court improperly admitted hearsay evidence of his prior bad acts of domestic violence against the victim.

Respondents concede that the instant action is not barred by the one-year limitation period. *See* 28 U.S.C. § 2244(d). Although Respondents argue that Mr. Gonzales failed to exhaust state remedies for his sixth claim for relief, I need not resolve the exhaustion issue because, for the reasons discussed below, I find that all of Mr. Gonzales' claims lack merit. *See* 28 U.S.C. § 2254(b)(2).

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an

---

[1]Mr. Gonzales concedes in his traverse that this claim lacks merit. (*See* Applicant's Traverse at 13.) Therefore, I need not address the merits of the fifth claim and the claim will be dismissed.

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Gonzales seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

4

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  **See**

**Romano v. Gibson**, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2)

allows me to grant a writ of habeas corpus only if the state court decision was based on

an unreasonable determination of the facts in light of the evidence presented.  Pursuant

to § 2254(e)(1), I must presume that the state court's factual determinations are correct

and Mr. Gonzales bears the burden of rebutting the presumption by clear and

convincing evidence.  "The standard is demanding but not insatiable . . . [because]

'[d]eference does not by definition preclude relief.'"  **Miller-El v. Dretke**, 545 U.S. 231,

240 (2005) (quoting **Miller-El v. Cockrell**, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's **result**, even if its reasoning is not

expressly stated."  **Aycox v. Lytle**, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I

"must uphold the state court's summary decision unless [my] independent review of the

record and pertinent federal law persuades [me] that its result contravenes or

unreasonably applies clearly established federal law, or is based on an unreasonable

determination of the facts in light of the evidence presented."  **Id**. at 1178.  "[T]his

'independent review' should be distinguished from a full de novo review of the

petitioner's claims."  **Id**.

<u>III.  MERITS OF THE CLAIMS</u>

<u>Claim One</u>

As noted above, Mr. Gonzales first claims that trial counsel provided ineffective

assistance by coercing him to waive his right to testify.  Mr. Gonzales was represented

at trial by two attorneys from the public defender's office, both of whom were women,

6

and he contends that they used their full feminine wiles to coerce him not to testify.  He further contends that he was extremely vulnerable to such coercion.  Mr. Gonzales alleges in support of his first claim that he repeatedly told counsel he wished to testify but counsel did not prepare him to testify; that his attorneys visited him in jail the night before he would have testified and pleaded with him not to testify; and that the head of the public defender's office later called and told him his attorney was crying and extremely upset because he was going to testify.

It was clearly established when Mr. Gonzales was convicted that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Gonzales must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id*.

Under the prejudice prong, Mr. Gonzales must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

If Mr. Gonzales fails to satisfy either prong of the two-part *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Finally,

ineffective assistance of counsel claims are mixed questions of law and fact. ***See id***. at

698.

In ***Gonzales II***, the Colorado Court of Appeals analyzed Mr. Gonzales' claim that

his attorneys coerced him to waive his right to testify in terms of whether Mr. Gonzales

voluntarily waived his right to testify.   The state court concluded that "[t]he record in this

case supports the postconviction court's determination that defendant's waiver of his

right to testify was 'his free, voluntary, knowing, intelligent act,' and not the product of

any coercion by counsel."   ***Gonzales II*** at 3.   The state court justified its conclusion with

the following reasoning:

> After receiving a thorough <u>Curtis</u> advisement at trial,
> defendant indicated he had not yet decided whether to
> testify, and the court gave him until the following morning to
> decide.  The next morning, defendant told the court that he
> had decided not to testify.  He stated that it was his voluntary
> decision, that he was not being forced to be silent by his
> counsel or anyone else, and that he understood that the
> ultimate decision whether to testify was his and not
> counsel's.
>
> At the postconviction hearing, defendant testified that
> he had wanted to testify at trial but that he "felt powerless" in
> the face of warnings by his trial counsel and her supervisor
> that he would face a life sentence if he took the stand.
> Defendant admitted that his attorneys had never said they
> would refuse to represent him if he decided to testify.
>
> Trial counsel, whose testimony the court credited,
> testified that she had visited defendant at the jail the evening
> after he received his <u>Curtis</u> advisement and had
> emphatically told him it would be a mistake to testify.  She
> told him that, if he testified, it would open the door to
> evidence of his prior gang affiliation and prior crimes he had
> claimed to have committed.  Counsel's concern, she stated,
> was that testimony by defendant would shift the jury's focus

from favorable circumstantial evidence regarding the charged offense to "focusing more on [defendant] himself."

The supervisor also testified.  She recalled that trial counsel was frustrated and a "little angry" after meeting with defendant.  The supervisor had then telephoned defendant to tell him that the defense team's feeling was "that he really had no hope of winning if he took the stand."

The postconviction court found that trial counsel was "upset, and forceful in her advice not to testify," but that she did not threaten defendant.  It further found that the attorney's advice was correct, in that defendant's testimony would have "significantly damaged his case, and enhanced the chance of conviction."

It was within the trial court's discretion to credit the attorneys' testimony over that of defendant.  The evidence credited by the court amply supports its determination that defendant's decision not to testify was not coerced.

*Gonzales II* at 3-5.

A defendant in a criminal case has a fundamental constitutional right to testify in his own defense.  *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  Furthermore, "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege."  *Brookhart v. Janis*, 384 U.S. 1, 4, (1966) (internal quotation marks and citations omitted).

The state court's conclusion that Mr. Gonzales voluntarily, knowingly, and intelligently waived his right to testify is not contrary to or an unreasonable application of Supreme Court law.  That conclusion also is not based on an unreasonable determination of the facts in light of the evidence presented.  In particular, I agree that

the advice Mr. Gonzales received from his attorney, that his testimony would have significantly damaged his case and enhanced the chance of conviction, was correct. Furthermore, pursuant to § 2254(e)(1), the state court's factual determinations are presumed correct and Mr. Gonzales bears the burden of rebutting the presumption by clear and convincing evidence.  I find that Mr. Gonzales fails to present any clear and convincing evidence to overcome the presumptively correct state court factual determination that he was not threatened by his attorney with respect to his decision to testify.  Therefore, I agree that Mr. Gonzales voluntarily, knowingly, and intelligently waived his right to testify.

Based on this determination that Mr. Gonzales voluntarily, knowingly, and intelligently waived his right to testify, it necessarily follows that counsel did not coerce Mr. Gonzales to waive his right to testify.  As a result, Mr. Gonzales' claim that counsel provided ineffective assistance by coercing him to waive his right to testify lacks merit and must be dismissed.

Claim Two

Mr. Gonzales argues in his second ineffective assistance of counsel claim that trial counsel had a conflict of interest.  Mr. Gonzales specifically alleges that he was represented by attorneys from the public defender's office and that the public defender's office previously had represented a witness endorsed by the prosecution, the motel housekeeper who discovered the victim's body.  Mr. Gonzales asserts that, as a result of this conflict of interest, trial counsel failed to interview and call the housekeeper as a witness.  He further asserts that the housekeeper would have testified that the pillow

alleged to have been used to suffocate the victim looked as if it had fallen off of the bed

and not as if it had been used as the murder weapon, which would have refuted the

testimony of the hotel manager that the pillow was lying across the victim's face at an

angle.  Mr. Gonzales maintains that the prosecution did not call the housekeeper as a

witness for obvious reasons.

A criminal defendant has a constitutional right to representation by counsel that is

free from conflicts of interest.  *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  In

order to prevail on a claim that counsel was ineffective because of a conflict of interest,

Mr. Gonzales must show both that counsel actively represented conflicting interests and

that the conflict of interest adversely affected counsel's performance.  *See id*.

The Colorado Court of Appeals addressed and rejected this ineffective

assistance of counsel claim in *Gonzales II*.  The state court reasoned as follows:

> A defendant generally has the right to conflict-free
> assistance of counsel.  A conflict of interest may arise where
> a lawyer's representation of a client is materially limited by
> the lawyer's responsibilities to another client.
>
> An ineffective assistance of counsel claim may be
> based on defense counsel's conflict of interest.  However, to
> obtain postconviction relief on this basis, the defendant must
> demonstrate that counsel was subject to an actual conflict of
> interest that adversely affected counsel's performance. The
> defendant must point to specific instances in the record to
> suggest actual impairment of his or her interest.
>
> Before trial, defendant's counsel advised him in
> writing that they had previously represented a witness
> endorsed by the prosecution. The witness, a housekeeper at
> the motel where the victim died, was the person who
> discovered the victim's body.  Counsel told defendant that,
> even before they realized they had previously represented

11

the witness, they had decided not to impeach her credibility because she neither "interferes with nor aids in the presentation of our theory of defense." Although counsel stated that they intended to raise the issue with the court, there is no indication in the record that they did so.

At trial, the prosecution did not call the housekeeper but, instead, called the motel manager to testify regarding the discovery of the victim's body. As relevant here, the manager testified that, when he arrived at the scene, a "pillow was partially covering [the victim's] face. It looked like it had just fallen off the bed." On cross-examination, the manager testified that his duties included "keep[ing] an eye on the premises," but that he had observed nothing unusual during the evening in question.

In the supplemental postconviction motion, counsel argued that the housekeeper would have helped refute the prosecution's theory that defendant must have acted with intent and after deliberation because he suffocated the victim with a pillow after strangling her. According to the defense investigator, whose report was appended to the motion, the housekeeper would have testified that the pillow was "not on top of [the victim's] face, but . . . was tilted on the side of her head," and that she "did not see anything odd or unusual" at the time of the killing.

The housekeeper's testimony would have added nothing to the testimony of the motel manager. If anything, the manager's testimony was more supportive of the defense contention that defendant did not smother the victim with the pillow. Defendant thus did not show that any conflict of interest adversely affected his counsel's performance or actually impaired his interest. Accordingly, as to this contention, there was no error in denying postconviction relief without a hearing.

*Gonzales II* at 8-11 (internal citations and quotation marks omitted).

It is apparent that Mr. Gonzales perceives some significant difference between

the hotel manager's testimony that the pillow was partially covering the victim's face and

looked like it had just fallen off of the bed, and the housekeeper's statement that the

pillow was tilted against the side of the victim's head but not on top of her face.  I do not

find that there is any significant difference between these two descriptions that would

demonstrate the alleged conflict of interest adversely affected the performance of trial

counsel in this case.  I agree with the state court that the housekeeper's testimony

would not have added anything to the hotel manager's testimony and, furthermore, I find

that the housekeeper's testimony would not have refuted the hotel manager's testimony

as argued by Mr. Gonzales.  Therefore, because Mr. Gonzales fails to demonstrate that

the alleged conflict of interest adversely affected trial counsels' performance, the state

court's rejection of this claim is not contrary to or an unreasonable application of the

relevant Supreme Court standards in *Cuyler*.

Claim Three

Mr. Gonzales asserts in his third ineffective assistance of counsel claim that trial

counsel was ineffective by failing to communicate with him and by failing to call an

expert witness to testify regarding a brain injury he suffered in 1992.  Mr. Gonzales

states in his traverse that he "will not argue that counsel failed to communicate with him,

but rather will state that the position was there was to [sic] much communication, which

in turn caused a complete breakdown."  (Applicant's Traverse at 8.)  Mr. Gonzales

supports his argument that counsel provided ineffective assistance as a result of too

much communication with his contention that counsel coerced him into waiving his right

to testify.  Because I already have determined that counsel was not ineffective by

coercing Mr. Gonzales to waive his right to testify, I find that counsel was not ineffective

by having too much communication with Mr. Gonzales based upon the same alleged coercion.

Regarding counsel's alleged failure to call an expert witness to testify about Mr. Gonzales' 1992 brain injury, Mr. Gonzales asserts that there was no legitimate strategic purpose for not calling an expert and presenting this information to the jury because evidence of his brain injury could have reduced the degree of his culpability.  The Colorado Court of Appeals applied the proper standards announced in ***Strickland*** and rejected this argument for the following reasons:

> Strategic choices made by defense counsel after thorough investigation of the law and the facts relevant to plausible options are virtually unchallengeable, and mere disagreement as to trial strategy will not support a claim of ineffectiveness.
>
> At the postconviction hearing, defendant's trial counsel testified that she and defendant had discussed possible defenses relating to his mental health issues.  She retained a neuropsychologist to evaluate defendant's mental condition.  The neuropsychologist, whose report is in the record, could not isolate the source of defendant's cognitive impairment.  Although he cited defendant's "mild" brain injury suffered in a 1992 car accident and his subsequent head injuries, defendant's chronic drug and alcohol abuse were "additional causes of his brain dysfunction and worsened life functioning."  Additionally, the therapist who treated defendant after the 1992 car accident believed that defendant's paranoia was "more likely related to crack cocaine abuse" than to the accident.  Counsel testified that the defense team was concerned about putting on testimony regarding defendant's brain injury that would open the door to evidence of his voluntary intoxication and drug abuse.
>
> Counsel's decision not to present evidence of defendant's brain injury was a strategic decision made after considering the full impact of the testimony, and thus does

> not constitute ineffective assistance of counsel.  We also
> note that defendant's criminal defense expert, whose
> affidavit was submitted as an offer of proof, did not opine
> that failure to present evidence of the brain injury constituted
> ineffective assistance of counsel.

*Gonzales II* at 13-14 (internal citations omitted).

The state court's determination that counsel was not ineffective by failing to call an expert witness to testify about Mr. Gonzales' 1992 brain injury is not contrary to or an unreasonable application of *Strickland*.  The Colorado Court of Appeals correctly noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690.  More specifically, "[w]hether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."  *Anderson v. Att. Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (internal quotation marks omitted).

I agree that counsel's decision not to call an expert witness to testify about Mr. Gonzales's 1992 brain injury was a strategic decision made after a reasonable investigation of the law and facts.  Mr. Gonzales bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice," *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002), and he has failed to make such a showing in this case.  In particular, Mr. Gonzales' assertions that "counsel's only investigation into [Mr. Gonzales' 1992 brain injury] was based on scant and outdated documents from Mr. Gonzales' neuropsychologist from when he received the brain injury" (Traverse at 9) and that counsel did not seek "a new evaluation based upon the

15

immediate condition of Mr. Gonzales' brain" (*Id.*) are factually incorrect.  The state court record includes a copy of the report of a neuropsychologist who examined Mr. Gonzales in 1999 subsequent to his arrest for killing his girlfriend.  Furthermore, given the fact that the neuropsychologist could not testify to a definitive link between Mr. Gonzales' 1992 brain injury and his mental state at the time of the murder, it was reasonable for counsel to make the strategic decision not to present any expert testimony regarding the 1992 brain injury because such testimony would open the door to additional unhelpful evidence of Mr. Gonzales' chronic drug use.  Therefore, this ineffective assistance of counsel claim also will be dismissed.

Claim Four

Mr. Gonzales' fourth claim for relief is that he was denied a fair trial when the trial court denied his challenges for cause of two prospective jurors.  Mr. Gonzales alleges that the two jurors in question openly admitted during voir dire that they were biased against Mr. Gonzales and could not consider voluntary intoxication as a defense even if given an instruction to do so.  Mr. Gonzales further alleges that he was forced to use peremptory challenges to dismiss these two prospective jurors after the trial court denied his challenges for cause.  Mr. Gonzales does not claim that any of the jurors who actually determined his guilt were biased or impartial.  The Colorado Court of Appeals rejected this claim on direct appeal in ***Gonzales I***.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant the right to an impartial jury.  ***See Ross v. Oklahoma***, 487 U.S. 81, 85 (1988); ***Irvin v. Dowd***, 366 U.S. 717, 722 (1961).  If a "juror's views would

prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he should be dismissed for cause. ***Wainwright v. Witt***, 469 U.S. 412, 424 (1985) (internal quotation marks omitted), ***see also United States v. Scull***, 321 F.3d 1270, 1278 (10th Cir. 2003).  However, in deciding whether the jury was impartial, I must focus on the jurors who ultimately deliberated and decided Mr. Gonzales' fate.  ***See Ross***, 487 U.S. at 86.

In the instant action, Mr. Gonzales' constitutional right to an impartial jury was not violated by the failure to dismiss two prospective jurors for cause.  Mr. Gonzales cured any constitutional error that may have occurred when the trial court refused to remove the two prospective jurors in question for cause by using peremptory challenges to remove them from the jury panel.  ***See id***. at 88.  The fact that Mr. Gonzales was required to use peremptory challenges to achieve the goal of an impartial jury does not demonstrate that his constitutional rights were violated.  ***See id***.  Therefore, the decision of the Colorado Court of Appeals to reject this claim is not contrary to or an unreasonable application of clearly established federal law.

Claim Six

Mr. Gonzales finally asserts in his sixth claim for relief that he was denied a fair trial when the trial court improperly admitted hearsay evidence of his prior bad acts of domestic violence against the victim.  The trial court, relying on Colorado state law, determined that the domestic violence evidence was admissible.  On direct appeal, the Colorado Court of Appeals affirmed the trial court's ruling on the basis that the domestic violence evidence was admissible as evidence of prior similar transactions.  ***See***

17

***Gonzales I*** at 6-8.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." ***Estelle v. McGuire***, 502 U.S. 62, 67-68 (1991).  Therefore, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." ***Mayes v. Gibson***, 210 F.3d 1284, 1293 (10th Cir. 2000); ***see also Fox v. Ward***, 200 F.3d 1286, 1296-97 (10th Cir. 2000) (stating that, to justify habeas relief, a trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process").

"[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint." ***Duckett v. Mullin***, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).  My "[i]nquiry into fundamental unfairness requires examination of the entire proceedings." ***Le v. Mullin***, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

Based on my review of the state court record of Mr. Gonzales' trial, I cannot conclude that the alleged error in admitting the evidence of the prior domestic violence by Mr. Gonzales against the victim was so grossly prejudicial that it fatally infected the trial and denied fundamental fairness.  Therefore, Mr. Gonzales' sixth claim for relief also will be dismissed.  Accordingly, it is

ORDERED that the habeas corpus application is DENIED and the action is

DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.

Dated:  May 12, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge